# EXCESS COMMERCIAL GENERAL LIABILITY DECLARATIONS
## This is a Claims Made Policy. Please read the entire form carefully.

### MEDMARC Casualty Insurance Company
#### 4000 Legato Road, Suite 800
#### Fairfax, Virginia 22033

**POLICY NUMBER** 99MN380003          **Renewal of Number** 98MN380006

**Named Insured & Address**

ST. JUDE MEDICAL, INC.
See SCHEDULE OF NAMED INSURED
One Lillehei Plaza
Saint Paul MN 55117

**Producer 's Name & Address**

WILLIS CORROON
200 S. 6th Street
Suite 1600
Minneapolis MN 55402-1436

**Policy Period:** From  01/31/99  to  01/31/00   at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**LIMITS OF INSURANCE:**

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other than Products/Completed Operations) | $ Excluded |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 10,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $ Excluded |
| EACH OCCURRENCE LIMIT | $ 10,000,000 |
| FIRE DAMAGE LIMIT | $ Excluded   Any One Fire |
| MEDICAL EXPENSE LIMIT | $ Excluded   Any One Person |

**RETROACTIVE DATE:** 12/18/87   Coverage under this policy does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date as shown if any.

**Form of Business:**   ☐ Individual   ☐ Partnership   ☒ Corporation
☐ Joint Venture   ☐ Organization (Other than Partnership or Joint Venture)

**Business Description:**   Medical Device Manufacturer

**Location of all Premises you Own, Rent or Occupy:**

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATE | ADVANCE PREMIUM | |
|---|---|---|---|---|---|
| | | | | PRODUCTS | ALL OTHER |
| Medical Device | | See Composite Rate Endorsement | | $ 415,140 | N/A |
| | | | | | |
| PREMIUM SHOWN IS PAYABLE AT INCEPTION: | | | | $ 415,140 | |

**ITEM 1. SELF-INSURED RETENTION AMOUNTS:** $3,000,000   per occurrence
$5,000,000   aggregate

**ITEM 2. ENDORSEMENTS ATTACHED TO THIS POLICY:**   See schedule attached

COUNTERSIGNED   April 7, 1999   BY   _Thomas A. Knepher_
                (DATE)                (AUTHORIZED REPRESENTATIVE)

0510196

Date Issued:  March 1, 1999

## EXHIBIT B

**MEDMARC Casualty Insurance Company**

4000 Legato Road, Suite 800
Fairfax, VA 22033

114 06 96

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 01/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

The following forms are all part of this policy:

| | |
|---|---|
| Products/Completed Operations Coverage Form | CG 38A 0696 |
| Common Policy Conditions | IL 0017 1198 |
| Corporate Officer Witness Statement | 057 0196 |
| Minnesota Changes | CG 2996 1093 |
| Minnesota Changes - Cancellation and Nonrenewal | IL 0245 1297 |
| Minnesota Changes - Loss Information | CG 2631 0893 |
| | |
| Additional Insured - Vendors | CG 2015 1188 |
| Amendment of Other Insurance Endorsment | 234 1196A |
| Amendment of Policy Conditions | 234 1196B |
| Batch Clause | 092 1196 |
| Blanket Additional Insured Endorsement | 206 1196 |
| Composite Rate Endorsement | 095 0696 |
| Contractual Liability Insurance - Broad | 234 1196C |
| Discontinued Operations/Products Liability Coverage | 251 1296 |
| Earlier Notice of Cancellation by Us | CG 0224 1093 |
| Exclusion - Designated Products | CG 2133 1185 |
| Incidental Medical Professional Liability | 264 0397 |
| Joint Venture Endorsement | 200 1196 |
| Knowledge of an Occurrence | 217 1196 |
| Nuclear Energy Liability Exclusion Endorsement | IL 0021 1194 |
| Punitive Damage Coverage | 079 0197 |
| Schedule of Named Insured | 234 1196D |
| Worldwide Coverage Endorsement | 097 0197 |

All other terms and conditions remain unchanged.

# PRODUCTS/COMPLETED OPERATIONS
# LIABILITY COVERAGE FORM

## THIS INSURANCE PROVIDES
## CLAIMS MADE COVERAGE. DEFENSE COSTS ARE IN-
## CLUDED WITHIN POLICY LIMITS.
## PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the insured shown in the Declarations, and any other person or organization qualifying as an insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (Section VI).

## SECTION I -- COVERAGES
### PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "products-completed operations hazard" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

        (2) Our right and duty to defend does not begin until the applicable limit of your self-insured retention has been used up in the loss reserves and payment of judgments, settlements and defense expense; and

        (3) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments, settlements and defense expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

    (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with paragraph c. below, during the policy period or any Extended Discovery Period we provide under EXTENDED DISCOVERY PERIODS (Section V).

c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

    (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

    (2) When we make settlement in accordance with paragraph 1.a. above.

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

 Contains ISO copyrighted material, used with permission

## 2. Exclusions

This insurance does not apply to:

### a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

### g. Damage to Property

"Property damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you; or

(4) Personal property in the care, custody or control of the insured.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3) and (4) of this exclusion do not apply to liability assumed under a sidetrack agreement.

### h. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

### i. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

   Contains ISO copyrighted material, used with permission   CG 38 A 06 96   □

**j.  Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising our of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**k.  Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  "Your product";

(2)  "Your work"; or

(3)  "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**l.  Patent Infringement**

"Bodily injury", "personal injury" or "property damage" arising out of any actual or alleged infringement of patent, copyright, trademark or service mark.

**m.  Pollution**

(1)  "Bodily injury", "personal injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2)  Any loss, cost or expense arising out of any:

(a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Item M (1) above will not apply to the products-completed operations hazard set forth in the Declarations, unless caused by any of your products that have been discarded, dumped, abandoned or thrown away.

**n.  Securities and Financial Interest**

"Bodily injury", "personal injury" or "property damage" arising out of or by reason of:

(1)  The purchase, or sale, or offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

(2)  Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

(3)  Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

**o.  Asbestos**

"Personal injury", "bodily injury" or "property damage" arising out of:

(1)  Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

(2)  The use of asbestos in constructing or manufacturing any goods, products or structures; or

(3)  The removal of asbestos from any goods, products or structures; or

(4)  The manufacture, transportation, storage, handling, distribution, sale, application, mining, consumption or disposal of asbestos or goods or products containing asbestos.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1.  All expenses we incur.

2.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

4.  All costs taxed against the insured in the "suit".

5.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

   **(1)** Agrees in writing to:

     **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

     **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

     **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

     **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **(2)** Provides us with written authorization to:

     **(a)** Obtain records and other information related to the "suit"; and

     **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. These payments will reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

In the event you are entitled by law to select independent counsel to defend you at our expense, the attorney fees and all other litigation expenses we must pay to that counsel are limited to the rates we actually pay to counsel we retain in the ordinary course of our business in the defense of similar claims or "suits" in the community where the claim arose or is being defended.

Additionally, we may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency including experience in defending claims or "suits" similar to the one against you, and to require such counsel, to have errors and omissions insurance coverage. As respects any such counsel, you agree that you and that counsel will timely respond to our requests for information regarding the claim or "suit".

You may at anytime, by your signed consent, freely and fully waive your right to select independent counsel.

## SECTION II -- WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

   **(1)** "Bodily injury":

     **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

Contains ISO copyrighted material, used with permission      CG 38 A 06 96      ☐

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee") or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**e.** At your option, any person or organization conducting clinical testing on your behalf, of products manufactured or distributed by you, but only if clinical testing follows your testing protocols.

**f.** Your Scientific Advisory Board is included as an additional insured, but only with respect to "bodily injury" and "property damage" for activities performed on your behalf.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as an insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" and including all Supplementary Payments.

**3.** Subject to 2. above, the Each Occurrence Limit is the most we will pay for damages because of all "bodily injury" and "property damage" arising out of any one "occurrence" and including all Supplementary Payments.

**4. a.** The Limits of Insurance for each of the coverages provided by this policy will apply excess of the self-insured retention (hereinafter referred to as the "SIR").

The SIR:

**(1)** Will apply only to "occurrences" covered under this policy; and

**(2)** Will apply separately to each "occurrence"; and

**(3)** Will include all amounts under the Supplementary Payments section of the policy.

Your bankruptcy, insolvency or inability to pay the SIR will not increase our obligations under this policy.

**b.** In the event there is any other insurance, whether or not collectible, applicable to an "occurrence", claim or suit within the SIR, you will continue to be responsible for the full SIR before the Limits of Insurance under this policy apply.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence".

Notice of an "occurrence" is not notice of a claim.

b. If a claim is received by any insured, you must:

(1) Immediately record the specifics of the claim and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" or "property damage" included within the "products-completed operations hazard" on other than a claims-made basis, if:

(1) No Retroactive Date is shown in the Declarations of this insurance; or

(2) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first insured.

     Contains ISO copyrighted material, used with permission     CG 38 A 06 96     □

c. The first insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first insured, this insurance applies:

a. As if each insured were the only insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

10. **Your Right To Claim And Occurrence Information**

We will provide the first insured shown in the Declarations the following information relating to this and any preceding products/completed operations liability claims-made Coverage Part we have issued to you during the previous three years:

a. A list or other record of each "occurrence", not previously reported to any other insurer, of which we were notified in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT Condition in PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS (Section IV). We will include the date and brief description of the "occurrence" if that information was in the notice we received.

b. A summary by policy year, of payments made and amounts reserved, stated separately, under the Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first insured within 60 days after the end of the policy period. In this case, we will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

11. **Self-Insured Retention**

Your Obligations under the Self-Insured Retention are:

a. With regard to any sums you pay toward your Self-Insured Retention (SIR), you must provide us with the following:

(1) copies of any bills paid, and

(2) copies of the check/draft in payments

You must provide us with such documentation within ninety (90) days of the date such expenses are paid. We will credit toward your SIR all reasonable sums paid by you. However, we will not credit toward your SIR any payment evidence submitted more than ninety (90) days from the date such payment was issued.

b. If we make payment on your behalf, we will bill you within thirty (30) days of such payment. All sums billed are due within thirty (30) days. Your failure to remit the amount billed will be grounds for termination of your coverage. Return premiums will be applied to the amount owed. Any return premiums in excess of the amount of money you owe us will be returned to you. In the event additional money remains outstanding you will be responsible to pay the balance.

**SECTION V – EXTENDED DISCOVERY PERIODS**

1. We will provide a basic Extended Discovery Period as described in paragraph 3 or, if you purchase it, a sixty month Supplemental Extended Discovery Period as described in paragraph 4, only if:

a. This Coverage Part is canceled or not renewed for any reason except non-payment of premium;

b. We renew or replace this Coverage Part with other insurance that:

(1) Provides claims-made coverage for "bodily injury", "personal injury" and "property damage" liability; and

(2) Has a Retroactive Date later than the one shown in this Coverage Part's Declarations; or

c. We replace the Coverage Part with other insurance that applies to "bodily injury", "personal injury" or "property damage" on other than a claims-made basis.

2. A claim first made during the basic Extended Discovery Period will be deemed to have been made on the last day of the policy, provided that the claim is for damages because of "bodily injury" or "property damage" that occurred before the end of the policy period of this policy (but not before any applicable Retroactive Date).

The basic Extended Discovery Period will not reinstate or increase the Limits of Insurance or extend the policy period.

3. The Basic Extended Discovery Period will be:

a. Five years, starting with the end of the policy period of this policy. This Basic Extended Discovery Period applies only to claims as a result of an "occurrence" covered by this policy which has been reported to us after the retroactive date, if any, shown in the Declarations but not later than 60 days after the end of the policy period. Notification of the "occurrence" or "incident" must be in accordance with paragraph 2a. of SECTION IV. - PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS (Duties in the Event of Occurrence, Claim or Suit).

b. Sixty days, starting with the end of the policy period, if no other insurance you purchase to replace this coverage part applies to the claim or would apply but for the exhaustion of its applicable limits of insurance.

This automatic basic Extended Discovery Period may not be canceled.

4. If you purchase the optional Supplemental Extended Discovery Period Endorsement, the Extended Discovery Period will be sixty months, starting with the end of the policy period of this policy. We will issue that Endorsement if the first Named Insured shown in the Declarations:

(1) Makes a written request for it which we receive within 60 days after the end of the policy period; and

(2) Promptly pays the additional premium when due.

The Supplemental Extended Discovery Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the Endorsement may not be canceled.

The Supplemental Extended Discovery Period Endorsement will also amend paragraph 4b. of SECTION IV - PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS (Other Insurance) so that the insurance provided will be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the Endorsement takes effect.

The Supplemental Extended Discovery Period Endorsement will not reinstate or increase the Limits of Insurance or extend the policy period.

5. We will determine the actual premium for the Supplemental Extended Discovery Period Endorsement in accordance with our rules and rates. In doing so, we may take into account the following:

a. The exposure insured;

b. Previous types and amounts of insurance;

c. Limits of Insurance available under this Coverage Part for future payment of damages; and

d. Other related factors.

The premium for the Supplemental Extended Discovery Period Endorsement will not exceed 200% of the annual premium for the Coverage Part to which the Endorsement would be attached and will be fully earned when the Endorsement takes effect.

## SECTION VI – DEFINITIONS

1. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

3. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of goods or products made or sold by you in the territory described in a. above; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

4. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

5. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

6. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. b. Your fulfilling the terms of the contract or agreement.

7. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

   g. Any written contract or agreement relating to the conduct of your business of manufacturing, selling or distributing "your products". Paragraph g. does not apply to any liability assumed by you under any such contract or agreement with respect to any "occurrence" caused by the sole negligence of the indemnitee(s).

8. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

9. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

10. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment: a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in a., b., c. or d. maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**11.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

As regards, "Products-completed operations hazard" and with respect to "bodily injury" or "property damage," the date of "occurrence" is deemed to be the earlier date of:

**a.** a claim is made or "suit" is brought alleging injury or damage resulting from your product;

**b.** a professional medical opinion is rendered which provides a basis for a claim or "suit" under the coverage provided;

**c.** medical expenses are incurred as a result of injury or damage;

**d.** death occurs from exposure to your product;

**e.** removal or replacement of an implantable product;

**f.** an accident involving your product which leads to a demand for a recovery of damages.

**g.** the date of the advisory memorandum initiated by you. An "advisory memorandum" is any communication issued by you to inform health professionals or other appropriate persons or firms of a risk of substantial harm from a product in commercial use.

**12.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**13.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Includes "bodily injury" and "property damage" arising out of clinical testing of products manufactured or distributed by you.

**c.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are included.

**14.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**15.** "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages
      are claimed and to which the insured must submit
      or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding
      in which such damages are claimed and to which
      the insured submits with our consent.

16. "Temporary worker" means a person who is furnished
    to you to substitute for a permanent "employee" on
    leave or to meet seasonal or short-term workload con-
    ditions.

17. "Your product" means:

    a. Any goods or products, other than real property,
       manufactured, sold, handled, distributed or dis-
       posed of by:

       (1) You;

       (2) Others trading under your name; or

       (3) A person or organization whose business or
           assets you have acquired; and

    b. Containers (other than vehicles), materials, parts or
       equipment furnished in connection with such goods
       or products.

"Your product" includes:

    a. Warranties or representations made at any time with
       respect to the fitness, quality, durability, perform-
       ance or use of "your product"; and

    b. The providing of or failure to provide warnings or
       instructions.

"Your product" does not include vending machines or other
property rented to or located for the use of others but not
sold.

18. "Your work" means:

    a. Work or operations performed by you or on your
       behalf; and

    b. Materials, parts or equipment furnished in connec-
       tion with such work or operations.

"Your work" includes:

    a. Warranties or representations made at any time with
       respect to the fitness, quality, durability, perform-
       ance or use of "your work"; and

    b. The providing of or failure to provide warnings or
       instructions.

          Contains ISO copyrighted material, used with permission            □

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes. ·

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

## MEDMARC Casualty Insurance Company

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

## MEDMARC Casualty Insurance Company

HOME OFFICE - VERGENNES, VERMONT

ADMINISTRATIVE OFFICE - 4000 LEGATO ROAD, SUITE 800, FAIRFAX, VIRGINIA 22033

(A STOCK INSURANCE COMPANY)

Secretary                               President

057 01 96

COMMERCIAL GENERAL LIABILITY
CG 29 96 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINNESOTA CHANGES

This endorsement modifies insurance provided under the following:

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. The EXAMINATION OF YOUR BOOKS AND RECORDS Common Policy Condition is replaced by the following:

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to one year afterward.

B. Paragraph 5. of SUPPLEMENTARY PAYMENTS (Section I – Products/Completed Operations Coverages) is replaced by the following:

5. Prejudgment interest awarded against the insured on that part of the judgment we pay.

C. The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – Products/Completed Operations Liability Conditions) is amended by the addition of the following:

Our rights do not apply against any person or organization insured under this or any other Coverage Part we issue with respect to the same "occurrence".

**INTERLINE**
**IL 02 45 12 97**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINNESOTA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. When this endorsement is attached to the Standard Property Policy CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

B. The following provisions apply except when Paragraph C. of this endorsement applies:

The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy, subject to the provisions of B.3. below, by first class mailing, or by delivery, of a written notice of cancellation to the first Named Insured and any agent, to their last mailing addresses known to us. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

3. **Policies In Effect**

   a. **Less Than 90 Days**

   If this policy is a new policy and has been in effect for fewer than 90 days, we may cancel for any reason by giving notice at least:

   (1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   (2) 30 days before the effective date of cancellation, if we cancel for any other reason.

   b. **90 Days Or More**

   If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

   (1) Nonpayment of premium;

   (2) Misrepresentation or fraud made by you or with your knowledge in obtaining the policy or in pursuing a claim under the policy;

(3) An act or omission by you that substantially increases or changes the risk insured;

(4) Refusal by you to eliminate known conditions that increase the potential for loss after notification by us that the condition must be removed;

(5) Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

(6) Loss of reinsurance by us which provided coverage to us for a significant amount of the underlying risk insured. Any notice of cancellation pursuant to this item shall advise the policyholder that he or she has 10 days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within 30 business days after receipt of the appeal;

IL 02 45 12 97                  Copyright, Insurance Services Office, Inc., 1997                  **Page 1 of 2**

(7) A determination by the commissioner that the continuation of the policy could place us in violation of the Minnesota insurance laws; or

(8) Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. This provision for cancellation for failure to pay dues shall not be applicable to persons who are retired at 62 years of age or older or who are disabled according to social security standards.

Under this item **B.3.b.**, we will give notice at least:

(1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium. The cancellation notice shall contain the information regarding the amount of premium due and the due date, and shall state the effect of nonpayment by the due date. Cancellation shall not be effective if payment of the amount due is made prior to the effective date of cancellation; or

(2) 60 days before the effective date, if we cancel for a reason described in **B.3.b.(2)** through (8) above. The notice of cancellation will state the reason for cancellation.

4. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

C. The following applies with respect to coverage provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

1. If this Coverage Part covers buildings used for residential purposes (other than hotels or motels), and has been:

a. In effect for at least 60 days, or

b. Renewed by us,

Paragraphs **A.2.** and **A.6.** of the **Cancellation** Common Policy Condition do not apply, and the following is added to the **Cancellation** Common Policy Condition:

We may not cancel this policy, except for:

(1) Nonpayment of premium;

(2) Misrepresentation or fraud made by you or with your knowledge:

(a) In obtaining this policy; or

(b) In connection with a claim under this policy;

(3) An act or omission by you that materially increases the risk we originally accepted; or

(4) A physical change in the Covered Property which:

(a) Is not corrected or restored within a reasonable time after it occurs; and

(b) Results in the property becoming uninsurable.

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation. The notice of cancellation will contain the reason for cancellation.

2. When this Coverage Part covers buildings used for residential purposes (other than hotels or motels), and is a new policy which has been in effect fewer than 60 days, cancellation is subject to the terms of the **Cancellation** Common Policy Condition except for Paragraph **A.2.**, and is not subject to Paragraph **B.** or Paragraph **C.1.** of this endorsement. Under this Item, **C.2.**, Paragraph **A.2.** of the **Cancellation** Common Policy Condition is replaced by the following:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

D. The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail, by first class mail, or deliver written notice of nonrenewal to the first Named Insured and any agent, to their last mailing addresses known to us, at least 60 days before the expiration date.

We need not mail or deliver this notice if you have:

1. Insured elsewhere;

2. Accepted replacement coverage; or

3. Agreed not to renew this policy.

 Copyright, Insurance Services Office, Inc., 1997 IL 02 45 12 97 □

COMMERCIAL GENERAL LIABILITY
CG 26 31 08 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINNESOTA CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM (CLAIMS-MADE VERSION)

Condition 10. Your Right to Claim and "Occurrence" Information of PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS (Section IV) is replaced by the following:

**10. Your Right to Claim and "Occurrence" Information**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding products/completed operations liability claims-made Coverage Part we have issued to you during the previous three years:

a. A list or other record of each "occurrence", not previously reported to any other insurer, of which we were notified in accordance with paragraph **2.a.** of this Section. We will include the date and brief description of the "occurrence" if that information was in the notice we received.

b. A summary by policy year, of payments made and amounts reserved, stated separately, under the Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information without cost only if we receive a request from the first Named Insured. In this case, we will provide this information within 30 days of receipt of the request. We will not provide this information without cost more than once in a 12 month period.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

CG 26 31 08 93                    Copyright, Insurance Services Office, Inc., 1993                    Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization (Vendor):   **All Vendors of the Named Insured**

Your Products:   **All Products of the Named Insured**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

       Copyright, Insurance Services Office, Inc., 1986, 1988         □

**MEDMARC Casualty Insurance Company**

163 10 96

4000 Legato Road, Suite 800

Policy Change #3

Fairfax, VA 22033

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

It is hereby understood and agreed that Section II - WHO IS AN INSURED is amended to:

Add the person or organization shown below as an insured. The person or organization is only an insured with respect to liability arising out of "Your work" or "Your product".

Name of Person or Organization:

1) Any Consultant engaged by the Company

2) Any supplier, but only with respect to liability in connection with the use of the supplies ' products or incorporation of such products into the Named Insured 's products, where indemnification of any supplier is required by contract.

3) Service Groups and their employee technicians (per list on file with the Company) but only with respect to liability arising out of service operations performed by St. Jude Medical, Inc./CAD-appointed service groups involving Centrifugal Blood Pumps.

All other terms and conditions remain unchanged.

_Thomas A. Koepke_

Issued:  April 21, 1999 cac

———————————————

Authorized Signature

**MEDMARC Casualty Insurance Company**
4000 Legato Road, Suite 800
Fairfax, VA 22033

234 11 96E
Policy Change #1
Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

MEDICAL BOARD ENDORSEMENT

SECTION II - WHO IS AN INSURED, Paragraph 2.f. is deleted and replaced with the following:

Your Medical Board is included as an additional insured, but only with respect to "bodily injury" and "property damage" for activities performed on your behalf.

All other terms and conditions remain unchanged.

_Thomas A. Knopke_
Authorized Signature

Issued: April 21, 1999 cac

**MEDMARC Casualty Insurance Company**
4000 Legato Road, Suite 800
Fairfax, VA 22033

234 11 96F
Policy Change #2
Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### AMENDATORY ENDORSEMENT

It is hereby understood and agreed that the Amendment of Other Insurance Endorsement - 234 1196A is deleted from this policy.

All other terms and conditions remain unchanged.

_Thomas A Knopke_
Authorized Signature

Issued:  April 21, 1999 cac

**MEDMARC Casualty Insurance Company**                                      234 11 96A
4000 Legato Road, Suite 800
Fairfax, VA 22033

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

### THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### AMENDMENT OF OTHER INSURANCE ENDORSEMENT

SECTION IV - PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS, Section 4 - Other Insurance, is replaced by the following with respect to coverage provided by the Steadfast Insurance Company:

This insurance is primary when:

1. Such insurance provided by the Steadfast Insurance Company has been exhausted by payments of suits, claims or expenses arising out of one or more occurrences; or

2. The coverage provided by the Steadfast Insurance Company is not valid, collectable or is cancelled.

When this insurance is primary:

1. The coverage provided will be excess of your self-insured retention and be subject to all other terms, conditions and exclusions which are a part of this policy.

2. Any loss amounts sustained by you resulting from the application of your self-insured retention underlying the Steadfast Insurance Company policy shall serve to reduce the total limit of this policy's self-retained limit, provided you cooperate with us to the extent required under the Conditions of this policy.

*deleted —*
*see*
*preceding*
*endorsement*

**MEDMARC Casualty Insurance Company**                                                234 11 96B
4000 Legato Road, Suite 800
Fairfax, VA 22033

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### AMENDMENTS OF POLICY CONDITIONS

We agree that SECTION IV - PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS, Section 2.a. is deleted from this policy.

We further agree that SECTION I - COVERAGES, Paragraph 1.a. is amended to include the following:

> Our right and duty to defend does not begin until the applicable limit of your self-insured retention has been used up in the payment of judgements, settlements and defense expense, or by estimated expenses (loss reserves).

**MEDMARC Casualty Insurance Company**                                    092 11 96

4000 Legato Road, Suite 800
Fairfax, VA 22033                                                        Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### BATCH CLAUSE

SECTION VI - DEFINITIONS, the term "occurrence " with respect to "products-completed operations hazard " is amended to include the following:

The term "batch " means all products which have the same known or suspected defect or deficiency which is identified by the same advisory memorandum.

The term, "advisory memorandum " is any communication issued by you to inform health professionals or other appropriate persons or firms of a risk of "bodily injury " or "property damage " from a product in use.

Coverage does not apply to any loss, claim or "suit " which arises out of a defect or deficiency which was known or suspected prior to the retroactive date shown in this policy.

When this endorsement is attached to your policy, all losses arising from a single "batch" of your product will be considered to be one "occurrence. " Therefore, when multiple losses are considered to be one "occurrence " you must only meet a single "self insured retention " amount. Likewise, our limit of liability due to "bodily injury " and "property damage " is limited to that of a single "occurrence ".

All claims made by persons or organizations seeking damages because of "bodily injury" or "property damage " arising out of one batch will be deemed to have been made at the time the first of those claims is made against you.

**MEDMARC Casualty Insurance Company**
4000 Legato Road, Suite 800
Fairfax, VA 22033

206 11 96

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PROPERTY/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

## BLANKET ADDITIONAL INSURED ENDORSEMENT
### (Primary Coverage)

It is hereby understood and agreed that the following is added to the Definitions section:

"Additional Insured " means any person or organization you are required to add as an Insured under this policy by:

  a. A written contract or agreement; or
  b. A written agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued; but, the written contract or agreement must be:

    (1) Currently in effect or becoming effective during the term of this policy; and
    (2) Executed prior to the "bodily injury", "property damage ", "personal injury", or "advertising injury".

It is further understood and agreed that the following is added as an Insured to Section II - Who Is An Insured:

  "Additional Insureds " however coverage is limited as follows:

  1. That person or organization is only an additional insured with respect to liability arising out of:

    (a) Premises you own, rent or occupy, or
    (b) "Your work " or "your product " for that additional insured by or for you.

  2. The limits of insurance applicable to the additional insured are the lesser of: (1) those specified in the written contract or agreement; or (2) in the Declarations for the policy. These limits of insurance are inclusive of and not in addition to the limits of insurance shown in the Declarations.

The insurance provided to the "additional insured " does not apply to "bodily injury", "property damage ", "personal injury" or "advertising injury" arising out of an architect 's, engineer 's or surveyor's rendering of or failure to render any professional services including:

1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, design or specification; and/or

2. Supervisory, inspection, or engineering services.

Any coverage provided herein is primary insurance as defined under Section IV - 4.a. of the policy over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis. The coverage will be primary only if: (1) a contract specifically requires the insurance to be primary; (2) you request the coverage apply on a primary basis; and (3) we give our consent by endorsement.

All other terms and conditions remain unchanged.

**MEDMARC Casualty Insurance Company**                              095 06 96
4000 Legato Road, Suite 800
Fairfax, VA 22033                                                   Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 01/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### COMPOSITE RATE ENDORSEMENT

Except as stated, this endorsement is subject to all the terms and conditions of this policy:

A.   The premium shown on the Declarations page is the amount to be paid in advance of insurance becoming effective. This premium, as shown, is only an estimate of the total premium for this policy. You may, at anytime revise your estimate and adjust the premium you have placed on deposit.

B.   The estimated premium will be held by us until the end of the policy period. At that time the final premium will be determined. If the earned premium exceeds the estimated premium you have placed on deposit, including any mid-term changes, you will pay the excess to us. If the earned premium is less than the estimated premium we will pay you. Any return premium will be subject to the terms and conditions of the minimum premium provisions. The final premium will be established no later than 180 days after the expiration of this policy.

C.   Each year, as part of the renewal process, we will review your account and make revisions as we deem appropriate. You may request that we review and re-rate your account any time. The rating basis in effect at the inception of your policy will govern that which will be used during the policy year for any changes made and reported to us, whether initiated by you or us.

D.   Your failure to cooperate is grounds for non-renewal of this policy at the completion of the current policy period.

E.

| Product Categories | Estimated Sales | Rate per $1,000 of Sales | Estimated Annual Premium |
|---|---|---|---|
| 1101 - Cardiovascular Implants & Prosthetics | | | |
| Domestic & Foreign: | $1,122,000,000 | $0.37 | $415,140 |

F.   Total Estimated Premium                                        $415,140

G.   Subject to a Minimum & Deposit Premium of                      $275,000

All other terms and conditions remain unchanged.

**MEDMARC Casualty Insurance Company**                                                                234 11 96C
4000 Legato Road, Suite 800
Fairfax, VA 22033                                                                                      Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

### THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### CONTRACTUAL LIABILITY INSURANCE
(Blanket Written Coverage - Broad Form)

We agree that the definition of an "insured contract " means any written contract or agreement relating to the conduct of the Named Insured 's business, and does apply to any liability assumed by the Insured under any such contract or agreement with respect to any occurrence caused by the sole negligence of the indemnitee(s).

**MEDMARC Casualty Insurance Company**
4000 Legato Road, Suite 800
Fairfax, VA 22033

251 12 96

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### DISCONTINUED OPERATIONS/PRODUCTS LIABILITY COVERAGE

It is hereby understood and agreed that the following is added to Section I - Coverages 1. Insuring Agreement:

d. Coverage under this policy applies to "bodily injury" or "property damage" arising out of your Cardiac Assist Division: products manufactured, sold, handled, distributed or disposed of prior to January 22, 1996

**Effective: 1/31/99**

**COMMERCIAL GENERAL LIABILITY**
**CG 02 24 10 93 (Revised)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARLIER NOTICE OF CANCELLATION
# PROVIDED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Number of Days' Notice _____90_____**

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.



POLICY NUMBER:  99MN380003                                          **COMMERCIAL GENERAL LIABILITY**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Designated Product(s):**

1) Bipolar ventricular endocardial leads – models 1016T and 1026T
2) All products of Telectronics Pacing Systems, Inc. manufactured, sold or distributed prior to 11/29/96
3) Ventritex, Inc. models V-110 & V-112 implantable cardioverter defibrillator devices containing Reeves-Hoffman KHZ Crystal Part Number 04-21690-001


(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any of "your products" shown in the Schedule.

**MEDMARC Casualty Insurance Company**                                    264 03 97 (Revised)

4000 Legato Road, Suite 800
Fairfax, VA 22033

Page 1 of 2

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**INCIDENTAL MEDICAL PROFESSIONAL LIABILITY**

SECTION II - WHO IS AN INSURED, item 2. a. (1.) (d) is amended to read:

(d) "bodily injury" arising out of his or her providing or failing to provide "professional health care services ". This does not apply to health care providers you employ. However, your employed health care providers, named or indicated by reference, are covered only with respect to professional services named in the Schedule as part of this coverage form.

SECTION I - COVERAGES, Sub-section 2. Exclusions. With respect to "professional health care services " the following exclusions are added:

This insurance does not apply to:

- Liability resulting from a criminal act by any health care provider.

- Any liability your employee may have as a proprietor, hospital administrator, officer, stockholder, or member of the board of directors, trustees, or governors of any:

  (1) hospital, nursing home or sanitarium;

  (2) clinic with bed and board facility; or

  (3) laboratory or other business.

SECTION III - LIMITS OF INSURANCE, item 2. is amended to read:

2.  The Aggregate Limit is the most we will pay for damages because of "bodily injury " and "property damage " included in the "products-completed operations hazard " & "professional health care services. "

SECTION VI - DEFINITIONS, the following term is added:

"Professional health care services " includes all "bodily injury " caused by an "occurrence " consisting of a negligent act, error or omission in the rendering or failure to render professional health care services whether committed by you or by any person whose negligent acts, errors omissions for which you are legally responsible in connection with any medical device or instrument which is manufactured, sold or distributed by you.

**MEDMARC Casualty Insurance Company**                    264 03 97 (Revised)

4000 Legato Road, Suite 800
Fairfax, VA 22033

Page 2 of 2

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

### PRODUCTS/COMPLETED OPERATIONS LIABILITYCOVERAGEFORM

---

#### INCIDENTAL MEDICAL PROFESSIONAL LIABILITY - Continued

For the purpose of this endorsement only, "incidental " is defined as the practice of medicine which only involves those professional services as described in the following schedule.

**SCHEDULE:**

---

| Description of Professional Services | Premium Basis | Rate | Premium |
|---|---|---|---|
| **Perfusionist engaged by St. Jude Medical, Inc./Aries Medical** | | | |
| **Field Clinical Engineers** | **Receipts** | **FLAT** | **Included** |

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, limitations or declarations of the policy to which this endorsement is attached, other than as stated above.

**MEDMARC Casualty Insurance Company**
4000 Legato Road, Suite 800
Fairfax, VA 22033

200 11 96

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

### JOINT VENTURES ENDORSEMENT

It is hereby understood and agreed that with respect to operations performed by you or for you by independent contractors, the final paragraph of SECTION II - WHO IS AN INSURED is amended to read:

This insurance applies to "bodily injury" or "property damage" arising out of the conduct of any partnership or joint venture of which you are or were a partner or member, even though this partnership or joint venture is not designated in the policy as a Named Insured.

It is further understood and agreed that Section IV - Conditions 4. Other Insurance is amended to include the following:

Coverage provided by this endorsement for joint ventures is excess over any other valid and collectible insurance purchased specifically for the joint venture, whether primary or excess.

It is further understood and agreed that the following is added to the Definitions section:

"Joint Venture" means a one time grouping of two or more persons in a business undertaking.

All other terms and conditions remain unchanged.

**MEDMARC Casualty Insurance Company**                                      217 11 96
4000 Legato Road, Suite 800
Fairfax, VA 22033                                                           Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### KNOWLEDGE OF AN OCCURRENCE

It is hereby understood and agreed that Section IV - Conditions 2. Duties in the Event of Occurrence, Claim or "Suit" is amended to include:

Knowledge of an occurrence by your agent, servant or employee does not constitute knowledge by you unless your executive officer, corporate risk manager or your insurance department received written notice of such claim from the agent, servant or employee.

IL 00 21 11 94

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
   TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

     Copyright, Insurance Services Office, Inc., 1994         □

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

          Copyright, Insurance Services Office, Inc., 1994          IL 00 21 11 94   □

MEDMARC Casualty Insurance Company
4000 Legato Road, Suite 800
Fairfax, VA 22033

079 01 97

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

PUNITIVE DAMAGE COVERAGE

It is hereby understood and agreed that SECTION I - COVERAGES 1. d. is added:

Except when prohibited by statute, coverage for Punitive or Exemplary Damages is included.

All others terms and condtions remain unchanged.

**MEDMARC Casualty Insurance Company**
4000 Legato Road, Suite 800
Fairfax, VA 22033

234 11 96D (Revised)

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 1/31/99 | 99MN380003 |

## THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### SCHEDULE OF NAMED INSURED

We agree that the following are included on this policy as Named Insureds:

St. Jude Medical, Inc.
Pacesetter, Inc.
 - Ventritex GmbH
 - Ventritex - Europe, Inc.
Pacesetter AB (Sweden)

St. Jude Medical S.C.,Inc.
St. Jude Medical Europe, Inc.
 - Brussels branch
SJM Europe, Inc. (fka St. Jude Medical International Inc)
 - Tokyo Branch

Medical Telectronics Ltd.
St. Jude Medical Sales Corporation
St. Jude Medical Puerto Rico, Inc.
St. Jude Medical Canada, Inc. (fka St. Jude Medical, Ltd.)
St. Jude Medical Brasil, Ltda.
 - Newcor Industrial S.A.
 - Telectronics Medica LTda.
151703 Canada Inc.
St. Jude Medical Tissue Corporation, Inc.
St. Jude Medical, Inc., Cardiac Assist Division

St. Jude Medical (Hong Kong) Ltd.
 - Shanghai & Beijing China Branch
Daig Corporation

St. Jude Medical Puerto Rico Holding BV
St. Jude Medical Puerto Rico BV (Puerto Rico manufacturing)

St. Jude Medical Australia Pty., Ltd. - Sydney Australia
St. Jude Medical Coordination Center
St. Jude Medical (Portugal)
Glory Telectronics Ltd.
Glory EME China, Ltd. - Hong Kong
Glory EME, Ltd. - Hong Kong
St. Jude Medical Sweden AB (Sweden)
St. Jude Medical Pacesetter Sales AB (Sweden)
St. Jude Medical Italia S.p.A. (Italy)
St. Jude Medical France S.A. (France)
St. Jude Medical Danmark A/s (Denmark)
 - Telectronics Scandinavia A/s (Denmark)
St. Jude Medical Finland O/y (Finland)
St. Jude Medical AG (Switzerland)
St. Jude Medical GmbH (Germany)
St. Jude Medical Medizintechnik Ges.m.b.H. (Austria)
 - St. Jude Medical Technik Export GmbH (fka Telectronics GmbH)
St. Jude Medical Export GmbH (Austria)
N.V. St. Jude Medical Belgium, S.A. (Belgium)
St. Jude Medical France S.A. (France) (fka Pacesetter France S.A.)
St. Jude Medical Espagna S.A. (Spain)
 - Portugal branch
St. Jude Medical UK Limited (United Kingdom)
Pacesetter Medical Products Limited (United Kingdom)
St. Jude Medical Nederland B.V. (Netherlands)
 - Telectronics B.V.-Netherlands
St. Jude Medical Sp.zo.o (Poland
St. Jude Medical Puerto Rico BV (Dutch Company)

...and any affiliated or subsidiary companies thereof, as now exist or may hereafter be constituted, formed, or acquired, over which the Named Insured maintains a majority (more than 50%) ownership interest, or management control.

**MEDMARC Casualty Insurance Company**                                              097 01 97
4000 Legato Road, Suite 800
Fairfax, VA 22033                                                                    Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 01/31/99 | 99MN380003 |

### THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### WORLDWIDE COVERAGE ENDORSEMENT

It is hereby understood and agreed that the Definitions section is amended to include:

"Commercial Activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

It is further understood and agreed that the Definitions section entitled "Coverage Territory " is amended to add :

3.c.(3)  "Commercial activity" worldwide.

It is further understood and agreed that Section I - Coverage 's 2. Exclusions is amended to include:

P.  "Foreign coverage ", "bodily injury" or "property damage " arising from "commercial activity" that is made and prosecuted within countries with which the U.S. Government has suspended or prohibited diplomatic or trade relations as declared by the Department of Commerce, Office of Export Administration, and/or Department of Treasury or Office of Foreign Control at the time the claim is made, unless the claims are made and prosecuted outside of such country or countries.

It is further understood and agreed that Section IV - Conditions 4. Other Insurance is amended to include:

d. Foreign Coverage - This insurance is primary if no other locally admitted policy or policies exist. In the event other similar insurance stated to be applicable to the loss exists, then this insurance is excess of such local insurance. The amount of our liability under this insurance will not be reduced by the existence of such other insurance.

All other terms and conditions remain unchanged.

**MEDMARC Casualty Insurance Company**
4000 Legato Road, Suite 800
Fairfax, VA 22033

234 11 96H
Policy Change #5
Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE  MEDICAL, INC. | 10/4/99 | 99MN380003 |

THIS ENDORSEMENT  CHANGES  THE  COVERAGE  FORM.  PLEASE  READ  IT  CAREFULLY.

This endorsement  modifies insurance provided under the following:

## PRODUCTS/COMPLETED  OPERATIONS  LIABILITY  COVERAGE  FORM

### AMENDATORY  ENDORSEMENT

It is hereby understood and agreed that the following individual is included on the Incidental Medical Professional Liability Endorsement  (264 0397) effective 10/4/99:

Dr. Paul Levine

All other terms and conditions remain unchanged.

Authorized  Signature

Issued:  November 4, 1999 cac

**MEDMARC Casualty Insurance Company**

4000 Legato Road, Suite 800
Fairfax, VA 22033

234 11 96G
Policy Change #4
Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| ST. JUDE MEDICAL, INC. | 9/27/99 | 99MN380003 |

### THIS ENDORSEMENT CHANGES THE COVERAGE FORM. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

## AMENDATORY ENDORSEMENT

It is hereby understood and agreed that the following is included on this policy as a Named Insured:

Vascular Science, Inc.

A retroactive date of 6/1/99 will apply.

All other terms and conditions remain unchanged.

_Thomas A. Knopke_
Authorized Signature

Issued:  November 4, 1999 cac