UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **AMERICAN INSURANCE COMPANY**, a Nebraska corporation,<br><br>Plaintiff,<br><br>v.<br><br>**ST. JUDE MEDICAL, INC.**, a Minnesota corporation,<br><br>Defendant. | Court File No. 08-013 (DSD/JJG)<br><br>**ST. JUDE MEDICAL, INC.'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL** |

**INTRODUCTION**

AIC's motion to compel raises ten specific issues for the Court's decision and St. Jude Medical addresses each of these issues below in the same order as they were raised by AIC. But first, St. Jude Medical responds to AIC's rhetoric that pervades its memorandum that St. Jude Medical has somehow engaged in "dilatory" tactics. As explained below, it has not, but given the lack of cooperation from AIC in the discovery process, it appears the Court will need to assist the parties in establishing an appropriate discovery plan.

**ANY DELAYS ARE DUE TO THE BREADTH OF AIC'S REQUESTS AND AIC'S DELAY IN AGREEING TO TAKE APPROPRIATE MEASURES TO ENSURE THE PROTECTION OF PRIVILEGED INFORMATION.**

Having been abandoned by AIC and left on its own to defend against the remaining tens of millions of dollars of Silzone claims, St. Jude Medical has every incentive to get this action resolved as soon as possible and no reason to seek to

delay it. Thus, not surprisingly, AIC's claims that St. Jude Medical has engaged in "dilatory" tactics delaying discovery are simply not true.

Two things, however, have affected the timing of discovery. First, AIC has requested all documents (numbering into the tens of thousands) concerning eight years worth of Silzone claims. As a result, it will likely take St. Jude Medical several months to complete its privilege review and produce all the documents AIC has requested. Second, it is AIC which has dragged out this process by refusing until September 30, 2008 to take measures ensuring that privileges applicable to the Silzone actions would not be waived by the requested production to AIC.

Within days of St. Jude Medical's January 21, 2000 recall of its Silzone-coated products, products liability claims began pouring in. To date, more than 275 such claims have been asserted in more than 30 jurisdictions, including class actions in British Columbia, Quebec, Ontario and Minnesota. (Affidavit of Jonathan M. Bye dated October 7, 2008 [Bye Aff.] at ¶2.) Each one of these claims, of course, is a complicated products liability case, potentially involving tens of thousands of documents. Multiply that by 275 claims over the last eight years, and the number of documents is staggering. Nonetheless, AIC has demanded the production of all documents relating to these claims (although why it would want to review all these documents is not clear). Intermingled in those documents, of course, are privileged communications – privileged communications concerning the Silzone claims themselves and privileged

communications concerning St. Jude Medical's insurance coverage of those claims.[1]

AIC did not serve its first set of discovery requests until June 18, 2008, and St. Jude Medical timely responded, without any extension, on July 22, 2008. (Thus, AIC is simply wrong when it blames St. Jude Medical for the fact that St. Jude Medical did not provide discovery responses during the first seven months of this case.) Nine days later, on July 31, 2008, the undersigned e-mailed AIC's counsel about the staggering number of documents AIC had requested, noting that many of the documents concerning the Silzone claims were privileged, and welcoming any thoughts AIC's counsel had as to how those privileged documents could be produced to AIC without waiving the privilege as to the underlying plaintiffs. (Doc. No. 43-4 at p. 58.)

St. Jude Medical's concern was that because AIC was adverse to it and was not providing a defense, underlying plaintiffs might argue that there was no common interest/joint defense which would prevent the waiver of any privilege in communications between St. Jude Medical and AIC concerning the underlying claims. For example, in *Owens-Corning Fiberglass Corp. v. Allstate Ins. Co.*, 660 N.E.2d 765, 769 (Ohio Misc. 1993), the court found that the insured's privileged information concerning underlying claims could not be provided to its insurer under the protection of the common interest/joint defense doctrine where there

---

[1] As used herein, "privileged communications" includes communications protected by the attorney client privilege and/or the work product doctrine.

was a dispute as to coverage, finding the notion of there being a common interest "somewhat laughable" in light of their "embittered dispute over whether or not insurance coverage applies."

At their August 13, 2008 meet and confer, counsel discussed the possibility of resolving this problem by entering into a written "common interest" stipulation in which they would ask the Court to declare that they did have a common interest such that their exchange of information would not constitute a waiver of any privilege. As a result, the next day, the undersigned forwarded such a proposed Common Interest Stipulation to AIC's counsel, noting that this issue needed to be resolved before anything could be produced concerning the underlying actions. (Bye Aff. at Ex. 1.) AIC, however, then announced that it would not even consider such an agreement, claiming that the standard confidential protective order that had been entered (Doc. No. 22) somehow allowed St. Jude Medical to produce privileged information to AIC without it constituting a waiver. (Doc. No. 43-5 at p. 18.) Despite being requested to by St. Jude Medical, AIC never provided any support for this startling argument and never proposed any alternative to the proposed Common Interest Stipulation.

As a result, on September 11, 2008, the undersigned wrote AIC's counsel indicating that St. Jude Medical would be moving for a protective order on this issue and again advising AIC that because of the volume of documents that AIC had requested, St. Jude Medical could not effectively begin its privilege review and production of documents concerning the Silzone claims until this issue of

4

what would be withheld on the basis of privilege was resolved. (Doc. No. 43-5 at p. 21.) As promised, on September 15, 2008, St. Jude Medical filed its motion for a protective order (Doc. No. 34). St. Jude Medical did, however, produce documents not affected by this privilege issue, specifically, those relating to its procurement of the policies.

In the meantime, Congress fortuitously intervened, enacting Public Law 110-322 which adopted new Federal Rule of Evidence 502. Subsection (d) of this new rule explicitly allows a court, without any need to rely on the common interest/joint defense doctrine, to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not a waiver in any other Federal or State proceeding." On September 30, 2008, lacking any excuse not to, AIC agreed to stipulate to such an order (Doc. No. 53) and the Court entered such a protective order on October 1, 2008 (Doc. No. 55). As a result, St. Jude Medical withdrew its motion for a protective order (Doc. No. 34), and it can finally begin document review and production of the tens of thousands of documents that AIC has requested concerning the underlying actions. St. Jude Medical will, of course, still need to review the documents for privilege concerning coverage issues and, true to form, AIC has, without explanation, refused to ease the burden in this regard by refusing to agree that any documents "clawed back" under Fed. R. Civ. P. 26(b)(5)(B) would remain privileged.

In connection with this monumental production task, the undersigned wrote AIC's counsel on October 1, 2008, the day the Protective Order was entered, to suggest that counsel meet and confer as to developing an orderly plan for how that production and subsequent discovery should occur. (Bye Aff. at Ex. 2.) Suggested topics to discuss included whether AIC really wanted all the documents concerning the underlying cases, as it had requested, as opposed to, for example, just the pleadings; the format for production of the documents it did want; the timing of the production; and the planning of subsequent discovery, including likely depositions and the timing thereof. AIC has not responded to this letter and until it does so, and agreement is reached as to how the documents will be produced, document production cannot appropriately begin.

Thus, as can be seen from the above, contrary to AIC's rhetoric, any delays in production have not been the fault of St. Jude Medical and it appears that the Court's assistance is required to develop an orderly plan for discovery before document production concerning the underlying cases can begin.

**ST. JUDE MEDICAL'S RESPONSES TO THE TEN SPECIFIC ISSUES RAISED BY AIC.**

**I.   AIC's Contention Interrogatories Are Premature, Overbroad and Unduly Burdensome.**

AIC requests an order from the court requiring St. Jude Medical to identify "all facts" and "all documents" supporting each of St. Jude Medical's affirmative defenses in response to three contention interrogatories (Interrogatory Nos. 11, 12 and 15). This request should be denied.

Courts recognize that contention interrogatories are best utilized at the end of discovery, after the responding party has a full and fair opportunity to ascertain the details of its case. *In re Convergent Tech. Sec. Litigation*, 108 F.R.D. 328 (N.D. Cal. 1985). A party serving contention interrogatories early in the discovery period, before substantial documentary or testimonial discovery has been completed, bears the burden to establish the necessity of obtaining an early response. *Fischer and Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992).

Courts in this district and across the country hold that contention interrogatories seeking "all facts" supporting a claim or defense are overbroad and unduly burdensome if the answering party is required to provide a narrative account of its case. *See Shqeirat v. U.S. Airways Group, Inc.*, No. 07-1513, 2008 WL 4232018, *4 (D. Minn. Sept. 9, 2008); *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006); *Turner v. Moen Steel Erection, Inc.*, No. 8:06CV227, 2006 WL 3392206, at *4 (D. Neb. Oct. 5, 2006); *Luna v. Del Monte Fresh Produce (Southeast), Inc.*, No. 1:06CV2000, 2007 WL 1500269, at *8 (N.D. Ga. May 18, 2007).

In response to St. Jude Medical's objections based on overbreadth and burden, AIC merely repeats that it is entitled to know "all facts" relating to St. Jude Medical's affirmative defenses. In addition, AIC states St. Jude Medical must enumerate "all documents," including date, author, and recipient of any document supporting the same. AIC's demand for "all facts" and "all documents" supporting each of St. Jude Medical's affirmative defenses is an impermissible

7

demand for a narrative account of St. Jude Medical's case – at an early stage in this proceeding. Accordingly, AIC should be required to limit each contention interrogatory to seek only the principal or material facts and documents supporting St. Jude Medical's affirmative defenses. *See e.g. Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998). Moreover, because the parties are only a few months into discovery in this matter, St. Jude Medical should be given the benefit of additional discovery, including depositions, before having to provide responses to AIC's contention interrogatories.

## II.     St. Jude Medical Has Not Refused to Produce a Privilege Log.

Contrary to AIC's allegations that St. Jude Medical has "never responded" to its requests or a privilege log (Doc. No. 42 at p. 17), St. Jude Medical has repeatedly informed AIC that because of the outstanding privilege issues regarding the underlying Silzone claims, St. Jude Medical would be substantially overburdened if required to produce a privilege log for tens of thousands of documents, only to have the need for such a privilege log obviated by a subsequent order from the court. *See, e.g.,* Doc. No. 43-5 at p. 21.

Because such an order has now been entered resolving the privilege issues regarding the underlying Silzone claims, St. Jude Medical's more streamlined privilege review can commence. Although the scope of documents that will be withheld on the basis of privilege is much narrower, there are still documents relating to coverage that St. Jude Medical will withhold (and identify on its

privilege log).  As soon as its privilege review is complete, St. Jude Medical will produce its privilege log of those documents.

As AIC surely understands, St. Jude Medical's universe of documents (given an eight-year litigation history of the underlying Silzone claims) is many, many times larger than that of AIC's.  But rather than work with St. Jude Medical to provide a reasonable calendar for production and subsequent depositions, AIC has fought St. Jude Medical on every attempt to provide a reasonable solution to any issue that has arisen during discovery.  At the same time, AIC has not provided St. Jude Medical with its own privilege log.  Accordingly, St. Jude Medical respectfully requests that the court set a reasonable production schedule for the parties, including deadlines for any applicable privilege logs, to assist the parties in avoiding additional discovery disputes.

### III.    St. Jude Medical Has Met its Obligations Under Federal Rule of Civil Procedure 34 by Stating that it Will Produce, Subject to its Objections, Any Responsive Documents.

Under Rule 34, a party must, "either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  It appears that AIC's concern is St. Jude Medical's use of the modifier "if any" as to the documents it will produce.  St. Jude Medical did not intend to be evasive; this is standard language used by the undersigned in responding to document requests.  And, as evidenced by St. Jude Medical's response to AIC's Request No. 6 ("..St. Jude Medical is not presently aware of any such written guidelines, instructions or manuals"), St. Jude Medical explicitly

9

stated when it did not believe it had documents responsive to AIC's specific request. [2] But to avoid further dispute, in response to Request Nos. 1-5, 7-13, 15-19, 25, and Second Request No. 1, St. Jude Medical hereby states that it does have documents responsive to these requests that it either has produced or will be producing.

## IV. The Parties Should Be Ordered to Produce Documents On A Reasonable Timeframe.

St. Jude Medical has repeatedly represented to AIC the large volume of documents responsive to AIC's interrogatories and document requests. Rather than work with St. Jude Medical to come to a reasonable solution for the production of these documents (a solution which St. Jude has requested as recently as October 1, 2008, *see* Bye Aff. at Ex. 2), AIC now takes the position that St. Jude Medical must produce all documents responsive to its requests immediately. Presumably, AIC feels it can make this demand with impunity because there is a significant disparity in discovery burdens in this case, with St. Jude Medical bearing the much larger burden of production because of the sheer number of potentially responsive documents relating to eight-years of litigation of the underlying Silzone claims. AIC's demand for immediate production is unreasonable for several reasons.

---

[2] AIC includes Request No. 6 in its list of requests with the same "nonresponsive answer." St. Jude Medical assumes this is a typographical error, as St. Jude Medical's response to Request No. 6 explicitly indicates St. Jude Medical is not aware of documents responsive to Request No. 6.

10

First, as AIC is aware, documents relating to the underlying Silzone claims, including all the pleadings, are largely contained in the files of St. Jude Medical's defense counsel, Reed Smith, in California. On July 31, 2008, St. Jude Medical informed AIC that these documents could be made available for AIC's inspection at Reed Smith (Doc. No. 43-4 at p. 58), but AIC has never requested such an inspection.

Second, because the privilege issue relating to the underlying Silzone claims has only just been resolved pursuant to the parties' Rule 502 stipulation, St. Jude Medical can only now begin its privilege review with respect to coverage privileged items which are not addressed by the parties Rule 502 stipulation.

Third, although not acknowledged by AIC in its motion, AIC (and its current coverage counsel) was part of a large group of insurers that for years received detailed litigation quarterly reports, status memorandums, and settlement evaluations from St. Jude Medical and its defense counsel in the underlying litigation. Thus, AIC should already have many of the documents it seeks to have St. Jude Medical re-produce "immediately."

Finally, in light of the tens of thousands of documents encompassed by AIC's requests, St. Jude Medical has requested that AIC confirm the documents from the underlying claims that it truly seeks to review. But AIC has not responded to this reasonable request. In light of St. Jude Medical's several attempts to create a reasonable solution to address the large-scale document production at issue in this litigation in an orderly and managed fashion, and AIC's

continual refusal to participate in such discussions, St. Jude Medical respectfully requests that the Court work with the parties to create a reasonable and appropriate discovery schedule and timetable regarding these production issues and other discovery items such as the order and timing of depositions.

## V.  AIC Has Asserted No Basis for Seeking Discovery Concerning Insurance Policies Beyond the Policy Year At Issue.

AIC also seeks an order compelling St. Jude Medical to produce documents concerning insurance coverage for years after the policy period at issue (January 31, 1999 to January 31, 2000). St. Jude Medical has produced documents relating to the procurement of insurance for the year at issue. St. Jude Medical has also produced such documents for the prior year because many of those policies were renewed for the year at issue. In addition, St. Jude Medical agreed to produce any documents concerning insurance coverage in later years to the extent those documents addressed the underlying Silzone claims.

Nonetheless, AIC alleges that it wants to see all documents related to later policy years for "obvious reasons." St. Jude Medical does not believe its coverage after the period at issue is relevant, or reasonably calculated to lead to the discovery of admissible evidence. St. Jude Medical is not seeking coverage for the Silzone claims for policies after the January 1999 through January 2000 policy period, and AIC has not argued that it would be proper for St. Jude Medical to do so. Whether or not AIC or anyone else issued a policy to St. Jude Medical after the relevant time period has no bearing on AIC's duty to defend and indemnify

under the policy at issue in this litigation. Because AIC has not and cannot articulate any reasonable basis requiring St. Jude Medical to produce this information, its motion for insurance documents concerning policy years subsequent to the year at issue should be denied.

## VI. St. Jude Medical Has and Will Continue to Produce Information Regarding Medmarc's and AIC's Batch Clause.

In AIC's contention Interrogatory No. 13, AIC seeks "all facts" and the identity of "all documents" supporting the application of Medmarc's and AIC's Batch Clause. As noted above, contention interrogatories such as Interrogatory No. 13 are deemed overbroad and unduly burdensome if they require a party to provide a narrative account of their case. In response to Interrogatory No. 13, St. Jude Medical has provided a thorough response, including a reference to specific documents, some which have already been produced (*e.g.,* the January 2000, advisory memorandum), and others which were subject to the privilege issue between the parties, which will be produced. AIC is entitled to nothing more.

## VII. Other "Batch" Claims and Other Medical Advisories Relating to Different Products in Different Policy Years are Irrelevant.

In Request 9, AIC seeks all documents relating to any non-Silzone claims for which St. Jude Medical has ever invoked a batch clause "like" the one in Medmarc's policy. At issue here, however, is the specific language of Medmarc's policy, as incorporated into AIC's follow-form policy, and whether the specific Silzone claims at issue here are covered by it. Whether and to what extent St. Jude Medical throughout its existence may have sought to "batch" different claims

13

concerning different products under different policies is irrelevant. Accordingly, St. Jude Medical's objections to this request are well-founded.

Similarly, in Request 14, AIC seeks all "medical advisories" that St. Jude Medical has ever sent out about any of its products. Again, what is at issue here is St. Jude Medical's Silzone-coated products and the "medical advisory," as that term is specifically defined by Medmarc's policy, concerning those products. Any "medical advisories" St. Jude Medical has sent out with respect to its myriad of other products during the course of its existence are irrelevant. Accordingly, St. Jude Medical's objections to this request are also well-founded.

### VIII. The Specific Information Requested Concerning the Silzone Claims is Readily Ascertainable from Documents that Will Be Produced.

In Interrogatory No. 7, AIC seeks seven categories of information as to each underlying Silzone claim. As St. Jude Medical informed AIC, it does not have this information readily available in the form requested by AIC, and it would have to be derived or ascertained from various documents. Accordingly, as authorized by Fed. R. Civ. P. 33(d), St. Jude Medical identified documents from which the requested information can be obtained. Pursuant to 33(d), a party may make records available for inspection and copying, and avoid burdensome and expensive research into its own business records, where the burden of ascertaining the answer is the same to both sides. *See* 1970 Advisory Committee Notes to Fed. R. Civ. P. 33(d).

AIC is well aware of the documents identified in St. Jude Medical's Answer to Interrogatory No. 7, because AIC (and its current coverage counsel) received detailed litigation quarterly reports, status memorandums, and settlement evaluations for several years.  Because AIC is familiar with these documents, it will not pose an unequal burden upon AIC to gather this information from the documents identified in St. Jude Medical's response to Interrogatory No. 7.  Because the privilege issue relating to these documents has now been resolved, the identified documents will now be produced.  St. Jude Medical is not required to do anything more.

### IX.   AIC's Request Nos. 10 and 17.

As explained in Section III above, St. Jude Medical's responses to several document requests using the phrase "if any," including Request Nos. 10 and 17, does not constitute a refusal to produce documents.  As further indicated above, in response to Request Nos. 10 and 17, subject to St. Jude Medical's objections, St. Jude Medical will make documents responsive to these requests available for inspection and copying.  Accordingly, St. Jude Medical believes AIC's motion to compel in connection with Request Nos. 10 and 17 is moot.

### X.   Loss Runs.

Because St. Jude Medical does not produce documents entitled "loss runs" in the normal course of its business, St. Jude Medical objected to this term as vague and requested that AIC explain what information it seeks in Request No. 21.  AIC has refused, stating instead that, "SJM knows what a loss run is."  Without

15

further information from AIC, St. Jude Medical cannot fairly respond to Request No. 21, and AIC's motion to compel in connection with this request should be denied.

## CONCLUSION

For the reasons set forth above, each of AIC's ten specific requests for an order compelling further discovery, along with its request for an award of fees, should be denied.  Instead, St. Jude Medical respectfully requests that the Court assist the parties in establishing an appropriate discovery plan concerning, among other things, the extent, manner and timing of document production and the timing of depositions.

**LINDQUIST & VENNUM P.L.L.P.**

Dated:  October 7, 2008.

By  s/ Jonathan M. Bye
Jonathan M. Bye (#148830)
jbye@lindquist.com
Thomas C. Mielenhausen (#160325)
tmielenhausen@lindquist.com
Christopher L. Lynch (#0284154)
clynch@lindquist.com
Meghan M. Elliott (#0318759)
melliott@lindquist.com
4200 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone:  (612) 371-3211
Facsimile:  (612) 371-3207

**ATTORNEYS FOR DEFENDANT ST. JUDE MEDICAL, INC.**

Doc# 2763285\1